# BENNINGTON COUNTY.

## FEBRUARY TERM, 1839.

PRESENT, HON. CHARLES K. WILLIAMS, *Chief Justice.*
    " STEPHEN ROYCE,
    " JACOB COLLAMER,   } *Assistant Justices.*
    " ISAAC F. REDFIELD,

## THE PRESIDENT, DIRECTORS AND COMPANY OF THE BANK OF MANCHESTER *v.* JOSEPH ALLEN.

In a suit brought by a bank, in which their corporate existence is put in issue, it is sufficient for them to show the charter, and parol evidence that they are transacting business as a bank.

Quære; whether, in a suit between such corporation and an individual, they can be required to show that they commenced business within a year, agreeably to a provision in the charter, that they should commence and be in operation within one year, and on failure thereof that the act of incorporation should be wholly void.

But if such proof must be made, it is *prima facie* evidence of that fact, that they were transacting business and exercising corporate powers, under their charter.

When a declaration counts on a note bearing date in March 1827, and the note given in evidence is dated in March 1837, and the county court render judgment for the plaintiff thereon, it is error.

THIS was an action of assumpsit against the defendant as indorser of a promissory note. The declaration described the note as bearing date March 27, 1827.

The defendant pleaded first, the general issue, and second, a special plea in bar " that there never was in existence any "such person or corporation as the said supposed President, "Directors & Company of the Bank of Manchester."

The issues upon said pleas were put to the court by agree-ment of the parties.

The plaintiffs, in support of their declaration, offered a note like that described in the declaration, excepting that it was dated March 27, 1837. The note offered was not objected to and its execution and indorsement were admitted by the defendant, and the fact of its due presentment for payment and that of notice to the defendant of non payment were proved.

The plaintiffs also introduced the act of the legislature creating them a corporation, which provided " that the said " corporation should take no benefit by said act and that the " same should be wholly void unless the said bank should " commence and be in operation within one year after the "passing of the same." They then proved that bills had been issued and were in circulation, purporting to be those of the corporation, and that notes were regularly discounted in their name, at their banking house.

The county court decided that, under the issues before them, no other proof, than that adduced, was necessary, that the bank did commence and was in operation within the time limited in the charter, and accordingly rendered judgment for the plaintiffs ;—To which the defendant excepted.

*D. Roberts, Jr.,* for defendant.

That the plea of *nul tiel corporation,* or *nul tiel persona in rerum natura,* is a proper plea in bar, is well established, notwithstanding some decisions in New York to the contrary. *Kyd on Corp.* 284. 1 Saund. R. 340. n. 2. 1 *Chit. Pl.* 436. *Proprietors of Kennebeck* v. *Call,* 1 Mass. R. 483. *Conrad* v. *Atlantic Insurance Co.* 1 Peters' R. 450. *Propagation Soc.* v. *Clark et al.* 3 do. 408. *Boston Type and Stereotype Foundry* v. *Spooner,* 5 Vt. R. 93.

Under the plea of *nul tiel corporation,* the plaintiffs were bound to prove their corporate existence ; and this by showing, 1st. the law conferring the power to organize. 2nd. the organization under and in obedience to that power.

The act is of itself merely inchoate—it perfects nothing. It is rather a license for the creation of a bank, than the creation of a bank. Its view is prospective—it looks to a state of things, which was to be, or might be, but which then was not, and to which, when they occurred, its provisions

BENNINGTON,
February,
1839.
───────
Bank of Man-
chester.
v.
Allen.

should attach.　Who were to be incorporated ?　" The sub-
scribers to the capital stock."　But, at the date of the pas-
sage of the act, there was no capital stock, there were no
subscribers.　Therefore, until subscriptions made, the corpo-
ration, which was to be made up of subscribers, could not
exist.

　Call the law a grant—it is a grant on condition of organi-
zation in obedience to its provisions, and, until condition
performed, it does not take effect as a grant absolute.

　The Legislature may prescribe the terms on which its
grants shall take effect, and may declare the consequences of
non-compliance with those terms.

　And these consequences strike at the existence of the cor-
poration, and are, therefore, such as third persons can at all
times insist upon, being universal.　The act shall be *wholly
void*—not voidable by *scire facias* or *quo warranto* ;　" the
corporation shall take *no* benefit by the act"—against whom ?
Against all, of whom benefit is to be taken—against the
world.

　Though these acts of the corporation may be evidence of
a present organization of some kind, we do not see that they
are evidence of such an organization as the charter requires,
unless there comes in aid of these acts the charitable pre-
sumption *omnia esse rite acta* ; a presumption, that, except
in cases of public officers—where to presume the contrary
would imply a breach of official duty, and except ancient
transactions, where proof is difficult ;—is not often allowed
in aid of defective proof.

　But say that the present acts of the bank are evidence of
its organization as a corporation, agreeably to the provisions
of the act, as to *mode* ; certainly they afford no evidence of
the *time* when the bank commenced and was in operation.
Mark the argument.　The plaintiffs are found operating as a
Bank in 1838—*ergo*, they commenced operations in 1833 !

　There is nothing in the note or indorsement to estop the
defendant from denying the corporate existence of the
plaintiffs.

　Those cases, which regard the question, how far a *non-user*
or *mis-user* of corporate powers can be objected collaterally,
are not in point here, for we do not make the point, that the
bank has ceased to be a corporation, but require proof, that

it ever was such. *Slee* v. *Bloom*, 5 Johns. Ch. R. 389. <span style="float:right">BENNINGTON,<br>*February,*<br>1839.</span>
Again, these decisions rest upon common law principles,
and not upon special statute provisions. *Trustees of Ver-* <span style="float:right">Bank of Man-<br>chester</span>
*non Society* v. *Hills*, 6 Cowen's R. 23. <span style="float:right">*v.*<br>Allen.</span>

The case of *Searsburgh Turnpike Co.* v. *Cutler*, 6 Vt. R.
315, decided nothing against the defendant ;—for

1. The point was tried on the general issue. The decision may stand on the state of the pleadings, though the ground, on which the decision was made to rest, should prove untenable. The whole reasoning, therefore, is, in a measure, extra-judicial.

2. There is no provision in the act incorporating the Searsburgh Turnpike Co., like the one in question, except the 6th section, which provided that if the road was not completed within three years to the acceptance of the Judges of Bennington county court, the grant of said corporation should be null and void. The completion of the road within the time prescribed, and the acceptance thereof by the Judges, were proved.

3. The Turnpike act incorporated, *in presenti*, certain persons by name, and the act was to become void only on a subsequent contingency, which never happened ; whereas in the bank act, the persons to be incorporated were not then in legal existence, and the act was to take effect as a law, only upon the happening of a contingency. The first contingency went to kill the thing having life ; the second, to give breath to the thing, which, until then and without it, had no life. *Bates* v. *Hazeltine, et al.* 1 Vt. R. 81.

II. The note offered in evidence was a different contract from the one declared on.

The date is description of the contract, and a variance therein is fatal. 3 Stark. Ev. 1597-8. 2 Camp. R. 308, in note.

*Sargeant & Miner*, for plaintiffs.

In an action by a corporation, the plaintiffs need not aver that they are incorporated, when they have been incorporated by a public statute. *Bill* v. *4th Western Turnpike Co.* 14 Johns. R. 416.

If it is not necessary to aver that fact, can it be necessary to prove it on trial, when the charter is made a public act, and one that all people are bound to recognize ? In this

Bennington,
February,
1839.

Bank of Man-
chester.
v.
Allen.
state all bank charters are made public acts, and for what purpose, unless it be, that they may be recognized by the courts, without proof of their existence?

The objection does not go to the merits, and should have been pleaded in abatement. 1 Chit. Pl. 436. 1 Vt. R. 151.

The general issue admits the ability of the plaintiffs to sue. 1 Chitty's Pl. 379. 1 Mass. R. 485.

A person contracting with a corporation cannot object that they have not been incorporate.l. 14 Johns. R. 416.

The introduction of the charter, with proof that they are *de facto* organized, is, at least, *prima facie* evidence that they are a corporation. *Searsburgh Turnpike Co.* v. *Cutler*, 6 Vt. R. 315.

The opinion of the Court was delivered by

WILLIAMS, Ch. J.—It is not considered in this state that a corporation plaintiff is obliged to produce their charter in evidence on trial of the general issue. The defendant may deny the existence of a corporation by a special plea, either in abatement, or bar. The plea in bar in this case was traversed, and it was necessary for the plaintiffs to prove their existence as a corporation. The plea of the general issue admitted nothing which should be proved under the other plea. The question is, whether the evidence was sufficient for that purpose, and it is sufficient to say that the question was settled in the case of *Searsburgh Turnpike Co.* v. *Cutler*, 6 Vt. R. 315.

The establishment of corporations, or the authority to individuals to act as such, and the powers and privileges incident thereto, are granted by act of the legislature. The grants are usually prospective, and the association to be thereafter formed. To prove the grant, it is generally necessary to produce the charter or act of the legislature, or a copy thereof. But this is dispensed with in some cases. The existence is some times presumed from the acts of the parties, as the party is not at liberty to deny the existence of a corporation when he has dealt with them as such, as the latter act presupposes their existence. The acceptance and organization are matters of fact which may be proved like other facts. They are not required to keep

any records, and although their proceedings may be recorded by their officers, yet such records are not the only proof of their proceedings. The acceptance and organization are to be inferred from their acts, and from their·exercising the powers and privileges given them by their charter.

It is urged that the act of incorporation, which declares that they shall take no benefit of the act, but that the same shall be wholly void, unless the bank shall commence, and be in operation within one year from the passing of the act, required of the plaintiffs to prove that the bank went into operation within one year. But this fact was to be proved in the same manner as the -acceptance of any charter. If, in point of fact, they were doing business as a bank under the charter and were exercising corporate powers, it was, at least, *prima facie* evidence, that the requirements of this section had been complied with, but if the defendant could insist that the grant was void on this account, the burthen of proof was turned on him. Besides, it is very questionable whether this objection could be raised at all, in a suit between the bank and individuals. It was a question between the state and the bank—the grantor and grantee—whether they were properly and legally exercising their corporate powers. The decision of the court on this question was ·correct.

There remains another question, whether the plaintiff was entitled to judgment on the note, which bears date in March 1837, and is described in the declaration as dated in·1827. It is with reluctance that we are compelled to pass on this question as we learn that it was not noticed at the trial below. If it had, it would have been undoubtedly corrected by an ·amendment. The counsel on both sides, probably, did not notice the mistake, and the note was read without any objections. As the case is drawn up, however, there is evidently error in the judgment of the county court, as the note varies from the description of it in the declaration. There is no count

BENNINGTON, February, 1839.

Bank of Manchester
v.
Allen.

for money had and received, on which it could be received in evidence, or on which judgment could be rendered.

For this latter objection, now for the first time made, the judgment of the county court must be reversed.