THE ÆTNA INSURANCE COMPANY v. SALMON WIRES AND WILLIAM H. PECK.

*Corporation. Powers of its officers. Pleading. Extinguishment of debt. Surety.*

In a suit in favor of a corporation, their corporate existence can be denied only by a special plea; and need not be proved under the general issue.

*Semble.* That an officer of a corporation, who is entrusted with the collection of its debts, would be authorized to assign them, without recourse, upon receiving their full amount.

Upon the dissolution of a co-partnership, one of the partners promised to pay a debt due from the firm, but failed to do so. The other partner, for the purpose of having it collected from the one who had promised to pay it, induced his brother to become the purchaser of it, and made an arrangement himself with the creditor by which it was assigned, without recourse, to his brother upon his paying the full amount due upon it. *Held* that the debt was not thereby extinguished, and that a recovery might be had upon it for the benefit of the assignee.

The one to whom the promise was made became thereby, as between himself and his copartner, a mere surety, and if he had himself furnished the money with which the demand was purchased, *quaere*, whether the original debt might not have been still kept on foot for his benefit.

ASSUMPSIT for insurance premiums received by the defendants as agents of the plaintiffs. The defendant Wires made no defense; the defendant Peck plead the general issue, upon which a trial was had by the court, March Term, 1855,—PECK, J., presiding,— when the following facts appeared.

The defendants, in June, 1853, were partners and as such were the agents of the plaintiffs, and received in that capacity premiums for the plaintiffs to the amount of $442.22, which was subject to a deduction of $22.35 for the defendants' charges as agents, leaving a balance of $419.22, due to the plaintiffs on the 1st of July, 1853. On the 8th of July, 1853, the defendants dissolved their copartnership, and Peck promised Wires that he would pay the plaintiffs their claim. He paid towards it only the sum of $87.20, which he remitted September 24, 1853, and in November following, Wires, being desirous to avoid the payment of the claim himself and to have its collection enforced from Peck, applied to his brother, Martin Wires, and requested him to purchase the claim by advancing to the plaintiffs the amount due upon it, and taking an instrument of transfer of it to himself. This the said Martin,

knowing the facts already stated and the motive of his brother, consented to do, it being understood that the defendant Wires was to make the negotiation with the plaintiffs. A correspondence was commenced for this purpose which resulted in the execution by the secretary of the plaintiffs, on the 30th of November, 1853, of a written assignment of the claim to the said Martin Wires, at his own risk and cost, for which he gave to the plaintiffs his note, payable to the order of, and endorsed by the defendant Wires for the amount then remaining due to the plaintiffs, and this note was paid at its maturity with the funds of Martin Wires, which were transmitted through the hands of the defendant, Wires. The claim thus assigned was, in pursuance of a previous arrangement with Martin Wires, placed by the defendant Wires in an attorney's hand for collection, and soon thereafter the present suit was brought; but the plaintiffs had no knowledge of it until in March, 1855; and they had never authorized it to be brought unless it was by giving the assignment.

The defendant Peck insisted that there was no legal assignment of the debt;—that plaintiffs had received their pay;—that the payment by Martin Wires, and the assignment, though an assignment in form, was, in fact and in law, a payment; that the defendant Wires could not procure an assignment for the purpose of having the debt collected for his benefit, and thus keep the debt subsisting; that the secretary of the plaintiffs had no power to assign the debt, and that there was no proof of the existence of the plaintiffs as a corporation, and for these reasons insisted that the plaintiff could not recover: but the court, upon the facts above detailed, rendered judgment for the plaintiffs for the amount claimed. Exceptions by the defendant Peck.

*Peck & Harvey*, for the defendant Peck, insisted

1st. That there was no proof of the corporate existence of the plaintiffs. 2d. That, if a corporation, the power of assignment was not incident to their corporate existence;—and, if they could assign, the secretary, as such, could not execute the transfer; and that therefore the suit, having been brought without authority, could not prevail. 3d. That, the promise from Peck to Wires not appearing to have been on consideration, the defendants stood jointly lia-

ble to the plaintiffs as between themselves, and that any agreement that the debt should be collected of one alone was a fraud upon him and could not be enforced.

*Geo. F. Edmunds* for the plaintiff.

The opinion of the court was delivered by

REDFIELD, CH. J.　I. We think it is sufficiently settled in this state that, in a suit in favor of a corporation, upon the plea of the general issue, the plaintiff is not required to adduce proof of the corporate existence; *Boston Type & S. Foundry* v. *Spooner*, 5 Vt. 93. Such defense should be made by way of plea in abatement or in bar.

II. The right of the secretary to bind the company by an assignment of its dues, without recourse, upon receiving the amount, does not seem very important. If it were, we should be inclined to regard it, as matter of course, in every officer entrusted with the collection of the debts of a company. But if the debt was or was not legally assigned so as to vest an equitable interest in the claim in M. Wires, and nothing more could be effected by any assignment, even under the corporate seal in pursuance of the vote of the company, in either case, it will not affect this suit unless the transaction operated to extinguish the debt. That is not a question in which the defendant Peck is concerned. It is between M. Wires and the company.

III. We think it did not extinguish the debt. The case finds that, upon the dissolution of the partnership of defendants, Mr. Peck promised to pay this debt; and we think we are not bound against the judgment of the court below, and the common mode of transacting such affairs, and the ordinary presumptions arising therefrom, to infer that the promise was without consideration. It was at the time of the dissolution; and if it formed a part of the dissolution it was upon sufficient consideration. And it would be a strange presumption to suppose it did not form one of the steps in the dissolution.

IV. This being so, the defendant Wires is a mere surety as between the defendants; and it was no want of good faith in the defendant Wires to procure a brother to buy the claim, and if done *bona*

*fide*, with M. Wire's funds, we do not see any want of good faith
in him, or that he can in any fair way be deprived of his beneficial
interest in the claim.   The transaction, as stated by the bill of
exceptions, is in no sense a payment.   The cases read by plain-
tiff's counsel show that, if the money had been defendant Wires',
he might still keep the claim on foot, being a virtual surety.   This
may be true where it is for the interest of the surety to keep the
original debt on foot, to preserve liens, &c ; but we have no occa-
sion to discuss it further here ; *Low* v. *Blodgett*, 1 Foster 121,
is that of a surety, and the claim purchased with his money and
assigned to a third person for his benefit; *McIntyre* v. *Miller* 13
M. & W. 725, is the case of a debtor furnishing the funds to pay
up the debts of a joint stock banking company, and assigned to some
third party, in trust for the co-debtor.   In both these cases, it was
held the transactions did not discharge the debts.

Judgment affirmed.