BURLINGTON GROCERY COMPANY *v.* THOMAS J. HEAPHY'S ESTATE.

May Term, 1923.

Present: WATSON, C. J., POWERS, TAYLOR, SLACK, and BUTLER, JJ.

Opinion filed October 7, 1924.

*Corporations—When Necessary to Allege Incorporation in Plead-
ing—"About" in Phrase "About July" in Contract Un-
ambiguous—Sales—Time of Delivery Specified in Contract—
Time of Delivery as Essence of Contract—Meaning of
"About" Used with Reference to Time—Contract for De-
livery "About July" Not Satisfied by Attempted September
Delivery—Circumstances for Consideration on Reasonable
Time for Delivery—Strikes or Freight Embargoes as Ex-
cuse for Late Delivery—Prior Orders No Excuse for Late
Delivery—When Question of Reasonable Time for Delivery
for Jury—Delivery Not Within Reasonable Time· as Matter
of Law.*

1. In an action by a corporation in its corporate name, it is not
   necessary to allege that plaintiff is a corporation, except in
   cases where the action in its gist and substance involves the
   fact of corporate existence.
2. The word "about" in the phrase "about July," used in an accepted
   order for Java sugar, while importing a more or less indefinite
   time, did not create an ambiguity.
3. The phrase "about July," used in an accepted order for Java
   sugar, *held* to relate to the time of delivery, and not to time
   of arrival of steamer carrying sugar at port.
4. Time for delivery of sugar specified in a contract *held* to be an
   essential element of the contract.
5. "About," used with reference to· time is of somewhat flexible
   significance, varying with the circumstances and the connec-
   tion in which it is employed, but, when used in such a sense as
   to become part of a contract, denotes approximation to exact-
   ness.
6. Contract for sale of Java sugar to be delivered "about July" was
   not satisfied by an attempted delivery on the sixth of Septem-
   ber.

7. Circumstances for consideration on the question of a reasonable time for delivery to buyer are such as the parties may be supposed to have contemplated in a general way when making the contract.

8. Strikes or freight embargoes not provided against in contract of sale will not excuse delay or affect question of reasonable time for delivery.

9. Late delivery under a contract by seller of sugar is not excused by fact that he adopted rule of priority in filling orders, and was unable to fill buyer's order earlier by reason of prior orders.

10. When facts are in dispute, what is a reasonable time for delivery of goods sold is a question for the jury under proper instructions, except where only one inference can reasonably be drawn, or the time is so short or so long that the court may declare it reasonable or unreasonable in any event.

11. Attempted delivery of sugar sold *held* not within a reasonable time as matter of law, on undisputed facts admitting of but one conclusion.

APPEAL from decision of commissioners disallowing claim against estate of Thomas J. Heaphy. Plea, general issue. Trial by jury at the September Term, 1922, Washington County, *Fish,* J., presiding. Verdict and judgment for plaintiff. The defendant excepted. The opinion states the case. *Reversed, and judgment for defendant.*

*H. C. Shurtleff* for the defendant.

*Warren R. Austin* and *J. Ward Carver* for the plaintiff.

TAYLOR, J.   This is a probate appeal from the disallowance by commissioners of a claim against the estate of the late Thomas J. Heaphy. The defendant moved the county court to dismiss the appeal on the ground, in substance, that the corporate existence of the plaintiff was not alleged. The first exception argued was saved to the overruling of this motion. In both the petition for an appeal and the accompanying declaration the plaintiff is described by name alone, but is referred to by the impersonal pronoun "it" and the petition is subscribed by one Blodgett as vice-president. It may be admitted as claimed that no suit can be maintained by a mere name; that a defendant is not compelled

to answer unless the suit is prosecuted in the name of a person, either natural or artificial, against whom he may have a valid judgment and execution. But it does not follow that if a plaintiff is a corporation, it must be set up as such.

[1] Cases from other jurisdictions are cited which sustain the defendant's position, but the weight of authority is to the contrary. The prevailing view is that in an action by a corporation in its corporate name it is not necessary to allege that the plaintiff is a corporation, except in cases where the action in its gist and substance involves the fact of corporate existence. 7 R. C. L. 697, where the leading cases are collected. See, also, 14A C. J. 817; 3 Cook on Cor. § 753. This view is, we think, supported by the better reasoning. The name in which the plaintiff sues imports a corporation. It could not be taken to be that of a person, and implying, as the name does, that it is a legal entity, it must be that of a corporation. It will not be presumed to be the name of an unincorporated company or partnership who can sue only in their individual names, but rather of an incorporated company which alone has the right to sue in such a name. In short, the name in which the plaintiff sues not being the name of an individual, must, to be a legal entity, be the name of a corporation. *Wheatley* v. *Chicago, etc. Bank,* 167 Ill. 480, 47 N. E. 711; *Bennington Iron Co.* v. *Rutherford,* 18 N. J. Law, 107, 35 A. D. 528. Other cases to the same effect are collected in a note to *Martin* v. *Ky. Lands Investment Co.,* Ann. Cas. 1913C, 335. It is said in *Stanly* v. *Richmond, etc. R. R. Co.,* 89 N. C. 331, that it is difficult to discover any sufficient reason why a corporation suing or sued should be designated by any further description than its corporate name, which does not apply with equal force to a natural person, the only purpose in either case being to point out the party to the action. To the same effect is *Leader Printer Co.* v. *Lowry,* 9 Okla. 89, 59 Pac. 242, wherein the true rule is stated to be that when a suit is commenced in a fictitious name, it will be presumed in law that the plaintiff is legally qualified to maintain it until the contrary is made to appear.

The question before the courts has usually been whether the allegation that the plaintiff is a corporation, or a corporation organized and existing under the laws of a state named, is sufficient. Such was the case in *Crockett* v. *Barre,* 66 Vt. 269, 29 Atl. 147. The general approval of the sufficiency of such de-

scription of a plaintiff corporation is not to be taken as a holding that it is a necesary allegation. While we have no case directly in point, it was held in *Aetna Ins. Co.* v. *Wires*, 28 Vt. 93, following, though not citing, *Bank of Manchester* v. *Allen*, 11 Vt. 302, that in a suit in favor of a corporation the plaintiff is not required to adduce proof of corporate existence upon the plea of the general issue—that the want of corporate existence and capacity to sue can be taken advantage of only by special plea. The inference therefrom would be that the questioned allegations were not essential to sufficient pleading. *State* v. *Mead*, 27 Vt. 722, and *State* v. *Vermont Central R. R. Co.*, 28 Vt. 583, do not stand in the way of adopting the prevailing rule. They come within the exception to the general rule stated above. *Nye* v. *Burlington & Lamoille R. R. Co.*, 60 Vt. 585, 11 Atl. 689, recognizes the principle that the name of a party, in that case the defendant, may itself import a corporation. We hold that it was not error to deny the motion to dismiss. We have not overlooked the possible application of the provision of the Practice Act (G. L. 1795) leaving the sufficiency of all pleadings in respect to matters of form for determination by the trial court, but the point not having been argued is not considered.

The claim in suit is based upon a writing dated May 14, 1920, of which the following are the material portions:

"T. J. Heaphy,
    Montpelier, Vt.
Bought of the Burlington Grocery Co.,
    Burlington, Vermont.
10 bags Java sugar                                26
                220
About July.
No cancellation.
No arrival no sale.
F. O. B. Montpelier car.

Import orders,—Goods sold subject to non-delivery if lost at sea or in transit.
    . . . . . . . . . . .

This order will not be accepted unless signed by the purchaser.
                Signature of Purchaser,   T. J. HEAPHY.
                Salesman,                 T. B. GARVEY."

At the time this order was taken the plaintiff had no Java sugar on hand. There was an extreme shortage of sugar, and it had a large shipment of Java sugar in transit, expected to arrive in New York during the month of July, from which the order was to be filled. The shipment arrived in port July 9, 1920, but owing to a strike of longshoremen, the sugar did not come out of the steamer until nearly three weeks after her arrival in port. Further delay was experienced owing to freight embargo on the railroads out of New York and the first carload of the sugar arrived in Burlington August 11, 1920. The plaintiff filled its orders from Burlington as the sugar arrived, giving priority to earlier orders, and shipped the sugar ordered by Mr. Heaphy on September 4, 1920, from the first sugar available for that purpose after its earlier orders were filled. The shipment arrived in Montpelier, September 6, 1920. August 24, 1920, Mr. Heaphy wrote the plaintiff, "Please cancel order of May 14 for 10 bags sugar to be delivered in July," which the plaintiff received the next day. Mr. Heaphy refused to accept the sugar, claiming that it was not delivered according to contract and relying upon the cancellation of the order. At the time the sugar arrived in Montpelier the market price had fallen to ten and a fraction cents. Later the plaintiff sold the sugar at auction at 10½ cents a pound and credited Mr. Heaphy with the balance of the proceeds after deducting storage and auction charges. The claim presented was for the balance of the price charged for the sugar, with interest, and the plaintiff recovered a verdict for the full amount.

Much of the evidence detailed above was received under exception against the objection that it was immaterial and furnished no excuse for failure to deliver within the time specified. Witnesses for the plaintiff were permitted to testify under exception as to the meaning of the term "no arrival no sale," and that in the custom of the trade it is used only in import contracts—never in domestic contracts or contracts relating to goods produced in this country. Evidence was received respecting the term "no cancellation" that it is never used in the grocery trade except in importation, and was used in this contract for the protection of both parties in case of fluctuation in the market price. Evidence was also admitted that the words "about July" import an importation contract, and in the custom of the im-

porting trade always refer to the arrival of the steamer or of the shipment in port. The objection to this kind of evidence was that it was immaterial—goes outside the writing and attempts to interpret it.

[2]    At the close of the evidence the defendant moved for a directed verdict on the ground, in substance, that the requirement of the contract as to time of delivery had not been complied with. The motion was overruled, to which the defendant excepted. The question turns largely on the construction to be given the phrase "about July." The use of the word "about" does not create an ambiguity, though it imports a more or less indefinite time. The plaintiff's theory at the trial was that the phrase related merely to the time of the arrival of the steamer at New York; that there was no time of delivery specified, in which case it was entitled to reasonable time after the month of July to make delivery. It was upon this theory that much of the evidence objected to was admitted. The defendant insisted that the term related to the time of delivery, and that, as matter of law, the delay shown justified the refusal to accept the sugar.

[3-5]    It must be held that the contract was for *delivery* "about July." As it is in this respect unambiguous, parol evidence of the understanding of the parties was not admissible. In view of the nature of the subject-matter of the contract, the known use for which it was ordered, and its fluctuating market value, the time of delivery was an essential element of the contract. *Standard Scale and Supply Co.* v. *Baltimore Enamel, etc. Co.,* 136 Md. 278, 110 Atl. 486, 9 A. L. R. 1502; *Norrington* v. *Wright,* 115 U. S. 188, 29 L. ed. 366, 6 Sup. Ct. 12. "About" used with reference to time is of somewhat flexible significance, varying with the circumstances and the connection in which it is employed. But when used in such a sense as to become a part of the contract the word denotes approximation to exactness. *Freeman* v. *Hedrington,* 204 Mass. 238, 90 N. E. 519; note, 17 Ann. Cas. 741; 6 R. C. L. 893.

[6-8]    It is clear that by any reasonable interpretation an attempted delivery on September 6 does not answer the requirement of the contract as to time. The result is the same if the term is regarded as importing a reasonable time after the expiration of the month named. The circumstances to be considered on the question of a reasonable time for delivery are such as the parties may be supposed to have contemplated in a general way

when making the contract. *Robinson Clay Prod. Co.* v. *American Loco. Co.*, 56 Misc. Rep. 589, 107 N. Y. S. 69. Strikes or freight embargoes which are not provided against in the contract would not excuse delay or affect the question of reasonable time for delivery. *Eppens, Smith & Wiemann Co.* v. *Littlejohn*, 164 N. Y. 187, 58 N. E. 19, 52 L. R. A. 811; *Standard Scale & Supply Co.* v. *Baltimore Enamel, etc. Co., supra;* note, 12 Ann. Cas. 313; 6 R. C. L. 985.

[9]    Nor would the question be affected by the rule of priority adopted by the plaintiff. The plaintiff's inability to make earlier delivery because of other orders to be filled would afford no defense. Mr. Heaphy was entitled to stand upon his contract unaffected by such orders. *Emack* v. *Hughes*, 74 Vt. 382, 388, 52 Atl. 1061. The case is unlike *Viles* v. *Barre & Montpelier Pr. & Tr. Co.*, 79 Vt. 311, 65 Atl. 104. There the plaintiff had contracted to furnish power to the defendant sufficient for the operation of its electric railway, but, owing to shortage of water, had failed to furnish the required amount of power at all times of the day. The defendant availed itself of the power furnished for operating its road when it could, but, in consequence of the shortage of power, the operation of the road was from time to time necessarily suspended. The suit was to recover *quantum meruit* for the power used. On the question of plaintiff's good faith in endeavoring to fulfill the contract, evidence that he gave the defendant a preference over his other patrons was held properly admitted. It would be quite another thing to say that one who had contracted for the delivery of a commodity by two independent agreements could excuse the nonperformance of one on time because he regarded himself as morally bound to prefer the other.

[10]    When the facts are in dispute, what is a reasonable time for the delivery of goods sold is ordinarily a question for the jury under proper instructions. This is so except where only one inference can reasonably be drawn, or where the time is so short or so long that the court may declare it reasonable or unreasonable in any event. Note, 6 Ann. Cas. 245. The true rule is well summarized in *American Oak Extract Co.* v. *Ryan*, 104 Ala. 267, 15 So. 807, where it is said that it is sometimes a question of fact and at others one of law. "When it depends on facts extrinsic of the contract, which are matters of dispute, it is a question of fact; but when it depends upon a construction of a

contract in writing upon undisputed extrinsic facts, it is a matter of law.''

[11]    The facts material to the issue presented by the motion were undisputed, and admit of but one conclusion. The tender of delivery was not made within the time required by the contract, and Mr. Heaphy was justified in refusing to accept the sugar. If the delay had been due to the failure of the steamer to arrive in port on time a different question would have arisen. The shipment arrived early in July. But for the strike and embargo, which are of no significance because not contracted against, it would have been within the power of the plaintiff to deliver the sugar well within the time specified. In the circumstances it should be held as a matter of law that the attempted delivery was not within a reasonable time, even if the contract is given the construction claimed by the plaintiff.

The plaintiff relies specially on *Loomis* v. *Norman Printers' Supply Co.*, 81 Conn. 343, 71 Atl. 358, as authority for many of the rulings excepted to. The case, however, is readily distinguishable from the case at bar. The action was for breach of a contract made June 2, 1906, for the sale of certain presses, printers' machinery, and equipment to be delivered by the defendant ''about June, 1906.'' The plaintiff notified the defendant on July 6, 1906, that he declined to accept the goods, and would not receive them if shipped, relying upon a breach of the agreement by reason of delay in delivery. The defendant claimed to have shown that immediately upon the execution of the contract it commenced to put the machinery ordered into condition for shipment; that on June 8, 1906, it received a telegram, followed by a letter, directing that shipment be withheld and requesting changes in the contract; and that, when the letter of July 6 was received, the goods were ready for shipment. On the other hand, the plaintiff testified that in June, and subsequent to the 8th, he wrote the defendant a number of unanswered letters requesting shipment. The question decided arose on a request for a charge that the words ''about June, 1906,'' fixed the time of delivery as any time in June, 1906, or a reasonable time thereafter, and that any time during the succeeding month of July might be, and was to be regarded as such reasonable time. The court charged that by the terms of the contract the defendant had the month of June and a reasonable time thereafter within which to make delivery, and submitted to the jury

the question of reasonable time, in view of the circumstances. In holding that the court did not err either in declining to charge as requested or in charging as it did, the rule given above was recognized and the decision expressly limited to the question presented. While the case supports the plaintiff's claim that the term "about July" implies a reasonable time thereafter, it does not make weight for the claim that it is always a question for the jury.

The holding that it was error to deny the defendant's motion for a directed verdict makes it unnecessary to consider other exceptions argued.

*Judgment reversed and judgment for the defendant to be certified to the probate court.*