SOLOMON LINCOLN & *als. versus* AUSTIN G. FITCH & *als.*

The person who indorses and puts in circulation a negotiable security, is incompetent as a witness to show that it was void at its inception.

Facts may be so interwoven with each other that a person, who is a competent witness as to some of them, and wholly incompetent as to others, cannot be allowed to testify to those for which he would otherwise be a competent witness.

A defendant cannot offer evidence in support of an issue which he has not presented by his pleadings.

The receivers of a bank, appointed to close its concerns, have no rights superior to those which the bank would have had if its management had remained in the hands of the directors; and the liabilities of third parties to the bank are not increased or otherwise varied by the appointment of receivers.

A draft having come into the possession of a bank fraudulently and without consideration, its exhibition as the property of the bank, to persons who thereafter became creditors of the institution, can have no effect upon the liability of the drawer and acceptor of the draft.

The president of a bank, with the knowledge of the directors, obtained possession of a draft, which had been signed in blank and intrusted to a third party for another purpose, without consideration, and without the knowledge of the drawers, and made use of it to increase the apparent assets of the bank: — *Held*, that the bank could stand in no better condition than the person who had been entrusted with it and had thus misappropriated it.

EXCEPTIONS and MOTION FOR NEW TRIAL from *Nisi Prius*, DAVIS, J., presiding.

This was an action of ASSUMPSIT upon a draft and bank check. The claim for the check was abandoned at the trial. No evidence in support of that claim was offered.

The draft or acceptance was as follows: —

"Boston, March 14, 1854.

"$10,000. Two months after date, pay to the order of A. F. Smith, at bank in Boston, ten thousand dollars, value received, which place to account of "A. F. Smith & Co.

"To Fitch, Hodgdon & Co., Springvale, Me."

Across the face of the draft was written, "Accepted, Fitch, Hodgdon & Co."; and on the back, "A. F. Smith."

"For value received, we hereby waive demand and notice as drawers and indorsers of the within.

"A. F. Smith & Co.,
"A. F. Smith."

It appeared that the defendants were interested in a factory at Springvale, in York county, and sometimes had occasion to raise sums of money in Boston.

When such occasions occurred, it appeared that they generally transacted the business through said A. F. Smith.

Sometime prior to the date of this acceptance, anticipating that they might wish to raise a few hundred dollars in Boston, to meet the balance of a small liability at the Merchants' Bank, the defendants left with said Smith a draft and a bank check signed by them in blank; it being understood that said acceptance and check might be used to discharge that liability, in case it became necessary by their failure to furnish other funds in season for that purpose. Other funds were seasonably furnished, and said blanks were not used; but remained in the hands of said A. F. Smith.

And it further appeared, that a part of the loan of the Cochituate Bank, consisted of securities discounted for the benefit of the Lyons Iowa Central Railroad Co., and that some of the securities had remained in the bank overdue and unpaid, until it had become the subject of complaint on the part of the bank commissioners.

Stephen M. Allen, whose deposition the defendants introduced, was president of the bank, and transacted nearly all its business. Wishing to substitute some other paper more acceptable to the bank commissioners, and to withdraw so

much of that loan as was overdue, in order to negotiate in New York to better advantage for its payment, the said Allen, acting for the bank, made the arrangement with said A. F. Smith for the acceptance and bank check, the particulars of which were stated by said Smith in his deposition.

Smith knew that the president was acting for the bank, but he knew nothing definite of the purpose for which the acceptance or check was to be used. Allen received the acceptance and check of Smith, and the Cochituate Bank received them of Allen as president. Smith received no value for the acceptance or check, and the bank paid nothing for them to anybody.

This whole arrangement was made without the knowledge or consent of the defendants, who resided in Sanford, in this State, and had no knowledge or intimation of the transaction until after the bank failed. It stopped payment on the 15th of April, 1854, and its assets having passed into the hands of receivers, they, as such, brought this action. The defendants appeared and pleaded the general issue and filed their brief statement of defence.

The case was tried, and the jury returned a verdict for the defendants. The plaintiffs filed a motion to set aside the verdict, as against evidence, and for a new trial. They also excepted to certain rulings of the presiding Judge. The points raised by the exceptions fully appear in the opinion of the Court. The motion for a new trial was not relied upon at the argument of the cause.

*N. Clifford* and *N. D. Appleton*, for defendants.

1. The defendants offered the deposition of Asa F. Smith, and when it was read to the jury, the counsel of the plaintiffs objected to the answer to the second interrogatory.

It is true that the Judge overruled the objection, and the answer was read; but it is also true that the Judge instructed the jury, at the request of defendants' counsel, made in the course of his argument, that the said answer could only be received for the purpose of showing, so far as it had that tendency, that the draft was accommodation paper; that it

was not admissible as evidence to prove any fraud in the inception of the draft, or that it was fraudulently put in circulation, and that for any such purpose they must disregard it and lay it out of the case.

Having stated the ruling and the instruction, we now give the question and answer.

Interrogatory 2.—"Did Fitch, Hodgdon & Co. receive any thing, to your knowledge, for or on account of said paper?"

Answer.—"They did not to my knowledge."

It is very clear that the answer has no tendency to prove any fraud in the inception of the note; and if it had, when unexplained, it would make no difference, as the jury were seasonably and most explicitly directed, that it was not admissible for that purpose, nor even to prove that the draft was fraudulently put in circulation.

They were instructed by the Judge, at the request of defendants' counsel, that the answer could only be received so far as it had a tendency to show that the draft was accommodation paper.

It was, in effect, saying to the jury, I will allow the answer to be read, and if you think it has any tendency to prove that it was accommodation paper, you may take it into consideration for that purpose only; but it is not admissible, nor can it be received, for any other purpose whatever.

2. Evidence admissible for the purpose of proving any one of the issuable facts in a case, although clearly inadmissible for other purposes, may always be submitted to the jury under proper instructions. *State* v. *Lull*, 37 Maine, 246; *Schillinger* v. *McCann*, 6 Maine, 370; *Bangor* v. *Brunswick*, 30 Maine, 398; *Whitney* v. *Cottle*, 30 Maine, 31.

Smith is not interested; and if he was, that would make no difference, as it could only affect his credibility.

His deposition was taken on the 17th of March, 1855, since the Act for the admission of interested witnesses went into operation. Laws of 1855, c. 181, page 207.

It follows, therefore, that the only remaining question is,

was it competent for the defendants to prove by Smith that nothing was paid for or on account of the draft, as a ground of inference, that it was accommodation paper?

Surely, it is not an impeachment of a bill or note, to show that it was made for the accommodation of one of the parties to the instrument; nor is the instrument any the less obligatory in the hands of third persons after such proof is made.

Assuming that the bank in fact received the draft, as the jury have found, on what principle is it that the testimony should be excluded?

It is not upon the ground that Smith is interested, because that difficulty, if it existed before the Act of 1855, is now removed.

There is no rule of policy in this or any other country which excludes this testimony.

3. The effect of the evidence, is not to prove that the instrument was originally void, nor to permit the witness to invalidate his own act. It is simply to allow the witness to explain the transaction as it took place between the original parties, in exact accordance with the views expressed by WILLES, J., in the leading case of *Walton* v. *Shelley*, 1 Term R. 301.

It was proposed in that case, to prove by the indorser, that the consideration of the note was illegal, and that the note was void at its inception; and it was held by Lord MANSFIELD, that it was against public policy to permit the witness to disclose that fact, as its effect would be to invalidate his own act as indorser.

No such question arises in this case, and we have no desire to touch the great controversy to which that decision has given rise. That doctrine was overruled in England shortly after it was laid down, and has never since received the sanction of the British courts. *Jordaine* v. *Lashbrooke*, 7 Term R. 601.

For the sake of the argument, let it be admitted that the weight of American authority is on the side of the case first named. Assuming that to be so, then it must be admitted

that the indorser of a negotiable security, negotiated before it is due, and in the hands of an innocent party, is not a competent witness to prove that such security was originally void.

But it is a sufficient answer to the supposed admission, to say that nothing of the kind is proposed in this case, nor is any such proposition involved in the ruling of the Court. On the contrary, the ruling of the Judge, as it appears in the bill of exceptions, adopts and affirms the opposite rule. 1 Greenl. Ev. § 384–5–6 ; 2 Williams on Ex'rs, 670, part 1 of 2d vol.

While the American courts pretty generally adhere to the rule in *Walton* v. *Shelley*, they are not disposed to extend it, and in many cases it has been limited and restrained. *Buck* v. *Appleton & als.*, 14 Maine, 284; *Thayer* v. *Crossman*, 1 Met. 416 ; *Franklin Bank* v. *Pratt*, 31 Maine, 501.

The defendants insisted at the trial, that Stephen M. Allen was the agent of the bank, and that he received the draft of Smith for and on account of the bank, and the jury have found by their verdict that it was so, and that too under instructions as favorable to the plaintiffs as they can ever expect.

Such being the fact, we think it clear that it was competent for the defendants to prove that no value was paid for the draft. *Bramhall* v. *Becket*, 31 Maine, 205–211 ; Story on Prom. Notes, §§ 190, 194, and cases cited; 2 Greenl. Ev. §§ 171 & 172, pp. 167, 169 ; Byles on Bills, 454, (* p. 323 ;) as to what is accommodation paper, Byles on Bills, 184.

Want of consideration may be set up as a defence between any of the immediate or original parties to a bill or note.

It being established, that Allen was the agent of the bank, it is clear that the defendants may show that the bank paid no value, unless the absurdity can be maintained that the receivers stand in a more favorable position than the corporation which they represent.

Speaking of the original parties to a promissory note, STORY says : — The same rule will apply to any derivative title under them, by any person who acts merely as their agent, and has given no value. Story on Prom. Notes, § 194.

An executor or administrator has no greater rights, in a

suit on a bill or note, payable to the deceased person whom they represent, than such deceased person would have had during his life time; and the same rule is applied to the assignees of a bankrupt's estate; and why should it not be applied in this case?

We see no reason, and think that none exists or can be suggested. Byles on Bills, pp. 40, 360; *Hyde* v. *Skinner*, 2 P. Wms. 196; *Williams* v. *Burritt*, 1 C. B. 402; 2 Williams on Ex'rs, 670, part 1, 2d vol.

4. The instructions requested were properly withheld. There is no evidence in the case tending to prove that Smith agreed that the draft should go into the possession of the bank, or that he had any knowledge whatever of the purpose for which it was to be used; consequently the first request was not called for, and was therefore properly refused, and the same remark applies to the second request.

They assume a state of facts which did not exist, and which there was no testimony to prove.

The doctrine of the requests is erroneous, and therefore they must have been refused, even if the facts were as the requests assumed them to be. *Agricultural Bank* v. *Robinson & als.*, 24 Maine, 274.

This case decides that the doctrine in the requests is wrong.

The requests assume that the above case is not good law, and for the present we are willing to leave that matter to the Court. 2 Smith's Lead. Cases, 562; 3 Hill, 219.

5. The general doctrine is now firmly established in this country, that whenever a corporation is acting within the scope of the legitimate purposes of its creation, all parol contracts made by its authorized agents, and express contracts of the corporation, and all duties imposed upon it by law, and services rendered and benefits conferred at the request of its agents, raise an implied promise, for the enforcement of which an action will lie against the corporation. Story on Ag. § 53, on p. 58, and cases cited; *Bank of Columbia* v. *Patterson*, 7 Cran. 350–6; Angell on Cor. c. 8, § 7, p. 212, note 4, and c. 8, § 8, p. 214, note 6.

An agent for a corporation may be appointed, as in the case of an individual, by a formal written instrument, as by power of attorney; or by an informal instrument, as by letter of instructions or by an unwritten request; or by implication, from his acquiescence in the acts of the agent. Story on Ag. § 54, p. 64; *Frankfort Bank* v. *Johnson*, 24 Maine, 490.

The officers of a bank are held out to the public as having authority to act according to the general usage, practice and course of business of such institutions; and their acts, within the scope of such usage, practice and course of business, bind the bank in favor of third persons having no knowledge to the contrary. Story on Ag. § 114, p. 130; *Franklin Bank* v. *Steward*, 37 Maine, 519; *Minot* v. *Mechanics' Bank*, 1 Pet. on p. 70.

Agency may be inferred from the relative situation of the parties; or, what is more common, from the habit and course of dealing between the parties. *Maine Stage Co.* v. *Longley*, 14 Maine, 484; 2 Greenl. Ev. § 64 & 65, and cases cited, pp. 56 & 57; *Warren* v. *Ocean Ins. Co.*, 16 Maine, 439; *Badger* v. *Bank of Cumberland*, 26 Maine, 428.

In all cases, except where the appointment of the agent is in writing, he is a competent witness to prove his authority. 1 Greenl. Ev. § 416, p. 532; *Lowber* v. *Shaw*, 5 Mason, 242; *Crooker* v. *Appleton*, 25 Maine, 131.

*H. W. Paine*, for plaintiff.

The Judge erred in permitting Smith to testify to want of consideration for the acceptance. Smith was one of the drawers, and he was also an indorser, and therefore incompetent to testify to any facts which tended to render the acceptance invalid.

Though the rule of exclusion has been generally applied to cases where the instrument is declared void by the statute, it is not limited to those cases.

In *Bank of United States* v. *Dunn*, 6 Peters, 51, the Court say, "it is a well settled principle, that no person who is a party to a negotiable instrument, shall be permitted by his own testimony to invalidate it."

In *Bank of Metropolis* v. *Jones*, 8 Peters, 12, the Court held the maker of the note incompetent to disclose any fact which tended to avoid the note. And the Court say, "if one whose name appears as drawer, indorser or acceptor, shall be competent to prove facts or circumstances which lessen or destroy its value, before or at the time he becomes a party to it, the credit of commercial paper could not be sustained."

To the same point are *Henderson* v. *Anderson*, 3 Howard, 73, and *Knights* v. *Putnam*, 3 Pick. 184.

The payee is not competent to swear to want of consideration between himself and maker, in a suit by indorsee against the maker, even when the note was taken to secure a preëxisting debt.   *Rossenberger* v. *Bitling*, 15 Penn. 278.

This case is not within the exception in *Thayer* v. *Crossman*, 1 Met. 416, for the acceptance was indorsed before maturity.

Nor within the exception in *Fox* v. *Whiting*, 16 Mass. 118, for the suit is brought by indorsees.

The second request for instruction should have been complied with.

1. The defendants, by giving the acceptance in blank to Smith, made him their agent to fill the blank and negotiate the paper. They took the risk of his using it for any purpose. They enabled him to perpetrate a fraud and must bear the loss.   *Licklanow* v. *Mason*, 2 Term R. 63; *Putnam* v. *Sullivan & al.*, 4 Mass. 45, is much in point.

The maker or indorser of a note for a particular purpose, takes the risk of its being used for a different purpose and in a different manner.   *Sweetser* v. *French*, 2 Cush. 309.

"Principals are responsible for the frauds, deceits and torts of their agents, although they did not authorize, justify or participate in them, or even know of such misconduct, or even if they forbade or disapproved." Story on Ag. § 452.

2. Allen's acts and agreements are not the acts or agreements of the bank, nor is his knowledge the knowledge of the bank.

The proof shows that he was acting for himself.

His discount of the acceptance was but provisional. It

was necessary that the board of directors should pass upon all paper offered. *Washington Bank* v. *Lewis*, 22 Pick. 24.

The case is distinguishable from *Agricultural Bank* v. *Robinson*, 24 Maine, 274.

The request for instruction assumes that the jury may find that the bank paid full value for the acceptance, and that the public was induced to give credit to the bank.

TENNEY, C. J.—The suit is upon an instrument purporting by its terms to be an acceptance drawn by A. F. Smith & Co. for the sum of $10,000, to be paid in two months from date, which is March 14, 1854, to the order of A. F. Smith, upon the defendants; accepted by them, and indorsed by A. F. Smith, with the written waiver of demand and notice, as drawers and indorsers, signed A. F. Smith & Co. and A. F. Smith upon the same paper.

In the specifications of defence, filed in the same case, it is alleged, that the promise contained in the acceptance, was without any legal or valuable consideration; that the defendants signed an acceptance in blank, without date, and sent the same to Asa F. Smith, in Boston, to be used if it should be necessary, to raise funds to the amount of about twenty-five hundred dollars, to meet payments to be made by them, and for no other purpose; that it was not used for that purpose, because said Smith was able to provide the amount necessary, without using the acceptance, and it remained in his hands some weeks, when an arrangement was made between him and the Cochituate Bank, through its president, Stephen M. Allen, that said Smith should fill up the blank acceptance, for the sum of $10,000, dated March 14, 1854, and permit said Allen to take it for the benefit of the bank, and without the knowledge or consent of the defendants, and without receiving any consideration therefor; and they deny that they had any knowledge of the transaction until after the failure of the bank, and that these plaintiffs have no other rights than those which the bank had at the time of its failure; and that the bank, by its president, well knew that said

blank acceptance was never placed in the hands of said Smith to be filled up and used for such a purpose as that for which it was used, but for other and different purposes. .

The plaintiffs introduced the acceptance declared on in the writ. Also evidence tending to show, that it came into the possession of the bank, by being negotiated in the course of business, and for a good and valuable consideration.

The deposition of said Asa F. Smith, having been introduced by the defendants, and it appearing therefrom that he was the indorser of the acceptance, the plaintiffs objected to the reading of the answer to the second question propounded to him by the defendants; but the Judge overruled the objection, and the answer was read; but in the charge, at the request of the defendants' counsel, made in the argument, the Judge instructed the jury, that the answer to the question could only be received, for the purpose of showing so far as it had that tendency, that the acceptance was accommodation paper; that it was not admissible in evidence, to prove any fraud, in the inception of the draft, or that it was fraudulently put into circulation; and that for any other purpose, they must disregard it, and lay it out of the case. The question was, "Did Fitch, Hodgdon & Co. receive any thing, to your knowledge, for or on account of said draft?" Answer. — "They did not to my knowledge."

If the defence relied upon was, that the draft was made by authority of the defendants, for the accommodation of the bank, no action in its favor could be maintained against them, inasmuch as the bank must have known for what purpose it was received. But this constitutes no part of the defence, under the specifications; and the proofs introduced, cannot be contradictory to the allegations made by the defendants, if objected to. They deny that they were ever parties to the paper, for the accommodation of this bank, or any other, or for any purpose whatever; that it was made, and indorsed, and put into the bank in fraud of their rights, without any consideration, consent or privity, on their part.

The rule of law relied upon by the plaintiffs, to exclude

this answer, is, that an indorser of negotiable paper, who has indorsed it and put it into circulation, with a view to give it currency as negotiable security, is incompetent as a witness, to show that it was void at its inception, when it was indorsed before maturity. This is the principle of the case of *Walton* v. *Shelly*, 1 Term R. 296; and the reason given is, that no man is admitted to allege his own turpitude, when the allegation will tend to encourage and support fraud and illegality. The principle of this case was adopted by the Court in *Churchill* v. *Suter*, 4 Mass. 156, as having been sustained in practice in that commonwealth uniformly for a long series of years. Since that decision, it has been treated as authority in Massachusetts, and this State, notwithstanding it has been explained and restricted by subsequent decisions, to narrower limits, than were erroneously supposed by some to have been designed by the Court which gave it; and, notwithstanding, it has not been treated as the true doctrine in England, and in some of the United States. *Thayer* v. *Crossman*, 1 Met. 416, and note to page 418.

The purpose for which the answer in controversy was allowed to be considered by the jury, not having been indicated as a ground of defence, but substantially denied, touching the paper, as the acceptance of the defendants, evidence having such tendency, was incompetent, if objected to. A defendant cannot offer evidence in support of an issue which he has not presented.

The answer in Smith's deposition, was from the person charged in the specifications with having filled up the blank check, and negotiated, indorsed and delivered the same, to be put into circulation, with a view to give it currency as negotiable security, against the defendants, as acceptors, and without any authority from them. The answer of the deponent, was full in support of the allegation in the specifications, that the defendants received no consideration for the acceptance, notwithstanding the qualification, that they received nothing for or on account thereof, *to his knowledge.*

When the want of consideration might be treated as made

out, if the deponent was believed by the jury, for the purpose for which it was allowed, it might be somewhat difficult for the jury to disregard this fact, if it constituted an element of importance, in proving the fraud alleged to have been practiced in the inception of the acceptance. Its introduction for one purpose, was suited to mislead the jury in their consideration of other matters before them, wherein it was stated by the Judge to be inadmissible.

The want of all consideration for the liability, purporting upon the acceptance to have been assumed by the defendants, was an important fact, in showing a defence on the grounds alleged; it was among the specifications filed. If they had received an equivalent, for their names being upon the paper as acceptors, the transaction might have been that for which they gave Smith authority to use the blank acceptance, although, at the time, they might have been ignorant thereof, and the defence would fail. A disqualification to testify, at the instance of the defendants, existed in the deponent, in making out the ground relied upon to defeat the action. No distinction could be made between one question and another, in this respect, when each and every fact, attempted to be shown thereby, was important in exhibiting the fraud in which he was charged with having participated. All the facts alleged in defence, were deemed important by the defendants, in making out the fraud of the deponent; and they were so interwoven with each other, that he could not be allowed to testify to one, when he was totally incompetent to testify to another.

The Judge was requested by the plaintiffs' counsel, to instruct the jury, that if they believed the acceptance was given to Smith in blank, and he agreed that it should go into the possession of the bank, to be exhibited as the property of the same, and it was so exhibited, the defendants are, through Smith, parties to the fraud on the public; and if any persons became creditors to the bank, after such exhibition, the defendants cannot set up such fraud, as a defence, and the plaintiffs are entitled to recover.

The requested instruction is predicated upon the ground that the bank did not pay from its funds any consideration for the draft; but that it was received for the purpose of exhibiting indirectly to the public, a condition better than that which in truth existed, and that this fraud was perpetrated by the procurement of the defendants' agent, in the use of the blank draft, which he had been authorized to fill for another purpose.

The plaintiffs are not to be treated as holders of the draft, having paid consideration therefor, without any knowledge of the fraud, or reason to suspect it. They represent the bank, for the purpose of closing its concerns, and for no other. They parted with nothing when they entered upon the discharge of their duties, and they have no rights superior to those which the bank would have had if the management of its affairs had continued with its directors; and the liabilities of the defendants are not increased or changed by their appointment.

The fact, that persons became creditors to the bank, after the draft came into its possession, and was exhibited as its property, can have no effect upon the defendants' liability. These creditors had no property in the draft; and even if they had knowledge that it was in the bank, and exhibited as its property, of which there is no suggestion, they are not to be more favored in the mode contemplated in the instruction requested, than they would be in a like transaction, in which an individual was the debtor. The case of the *Agricultural Bank v. Robinson*, 24 Maine, 274, is in point, and decisive of this question.

The second instruction requested, is upon the assumption, that the draft was filled in the manner, and for the purpose alleged in the defendants' specifications, they having received no consideration therefor; with the additional fact, that it was discounted, and the money paid therefor, by the bank, coupled with the other fact, assumed in the first instruction requested, that the draft was entered upon the books, and exhibited as a part of the assets of the bank, to the bank commissioners,

and the bank continued after that to pay its bills and to receive deposits. And upon such finding, it was requested, that the jury be told that the plaintiffs could recover. The facts assumed in the request, may all be satisfactorily proved, and the bank have had full knowledge of the manner in which the draft was obtained, in the transaction between the president of the bank and Smith, at the time when the draft came to its possession; and by a well settled principle of law, the bank can stand in no better condition than the one who obtained the draft from Smith. And the plaintiffs cannot, on the facts supposed in the request, be more able to maintain this suit, than they would have been if it had not been assumed, that the draft was in fact discounted, and the money paid therefor by the bank. *Exceptions sustained, verdict set aside, and new trial granted.*

RICE, HATHAWAY and CUTTING, J. J., concurred.