LITCHFIELD BANK, BY ITS RECEIVERS, vs. SIDNEY PECK.

The defendant gave his note to a bank for five shares of its stock, transferred to him, under an arrangement with the bank soon after its organization, by one of the original subscribers to its stock. The defendant was induced to take the stock and give his note by fraudulent representations of the agents of the bank as to its condition. The bank soon after failed and went into the hands of receivers for the benefit of its creditors, its assets being insufficient to pay the bill holders. In a suit brought by the receivers on the note, it was held that the defendant could set up by way of defense the fraudulent representations of the bank and the want of consideration, as well against the receivers as against the bank itself.

ASSUMPSIT, on a promissory note of the defendant given to the Litchfield Bank in part payment for five shares of the stock of the bank, transferred to him under a contract with the bank soon after its organization, by one of the original subscribers to the stock. The suit was brought by the receivers of the bank. The case was tried to the jury on the general issue with notice.

The defendant claimed that the note was obtained by fraudulent representations made by the agents of the bank, in regard to its condition and the value of its stock. The bank had soon after failed and passed into the hands of the receivers under an order of the court, and its assets proved insufficient to pay the holders of its bills. The plaintiffs requested the court to instruct the jury, that the receivers represented the creditors of the bank, and that as against the defendant the receivers were entitled to recover, notwithstanding any supposed want of consideration of the note, or any supposed misrepresentations made to the defendant by the agents of the bank. The court did not so instruct the jury, but charged them that, although for some purposes the receivers represented the creditors of the bank, and in some cases might have rights superior to the bank itself, yet in regard to the defense here relied upon the receivers stood upon the same ground with the bank, and if the jury found that the note was without consideration, or found that it was obtained by fraudulent representations made by the agents of the bank, then the

plaintiffs could not recover, subject however to the same quali-
fications that would apply in case the bank itself were plaintiff,
to wit, that the misrepresentations were material, and were
substantial inducements of the contract.

The jury having returned a verdict for the defendant, the
plaintiffs moved for a new trial.

*H. Dutton* and *G. C. Woodruff*, with whom was *Catlin*, in
support of the motion, cited Rev. Stat., tit. 3, §§ 247, 248,
249, 250; *Eastern Bank* v. *Capron*, 22 Conn., 639; *Litch-
field Bank* v. *Church*, 29 id., 137; *Haxton* v. *Bishop*, 3
Wend., 22; *Powis* v. *Harding*, 37 Eng. L. & Eq., 451;
*Henderson* v. *Royal British Bank*, 38 id., 86; *Daniell* v.
*Royal British Bank*, id., 559; *Hartford & New Haven R.
R. Co.* v. *Kennedy*, 12 Conn., 499; *Same* v. *Boorman*, id.,
530; *Mann* v. *Cooke*, 20 id., 178: Chitty on Contracts, 686,
note.

*Hubbard* and *Kellogg*, contra, were stopped by the court.

SANFORD, J.   The only question in this case is, whether
the defense set up can be made available against these receiv-
ers.   That it would have been entirely so, in a contest
between the defendant and the bank itself, is undeniable, and
is not denied; but the receivers claim that they represent
creditors, and therefore stand on higher ground than the bank
ever stood, and that against them this defense can not be
interposed.

That they represent creditors may be conceded, and that in
some cases they may enforce claims which the bank itself
could not enforce, need not, perhaps ought not, to be denied;
but in what way, and by force of what principles of law,
equity or justice, receivers or creditors could avoid the appli-
cation or escape the force of this defense, and compel the
payment of this demand, we are unable to discover.   A
creditor may disregard a fraudulent conveyance of property by
his debtor, and by process seize and secure that property for
the satisfaction of his debt, notwithstanding such conveyance,

and although by the debtor himself such property could never be reclaimed. And we have held that a trustee under our insolvent law, may recover and hold such property as part of the insolvent's assets, nothwithstanding such conveyance. *Rood* v. *Welch*, 28 Conn., 157. For the same reason, we suppose a fraudulent release or assignment of a debt may be treated by the creditors of the releasor or assignor as void; and such debt may be attached and held by them, though as to the releasor or assignor, it is forever beyond his reach.

But, in the case before us, the defense assumes that no legal or equitable debt against the defendant ever had existence, and consequently that there never was any thing which creditors could have seized. The fact that the note was without consideration, and was procured by the fraudulent representations of the holder, would always afford to the maker an adequate defense against any proceeding by foreign attachment or otherwise, which a creditor of the holder could institute against him. Neither in law, equity or conscience was this defendant the debtor of the bank, nor had he assumed, nor was he by the charter or the law charged with, any responsibility for its debts or obligations. These receivers are not indorsees, nor were they in fact appointed until after the maturity of the note, so that the rule of policy which protects the *bona fide* holder of negotiable paper, can have no application in their favor.

The statute which authorizes their appointment, clothes them only " with the powers and rights for the collection of debts due to such bank, or for the recovery of property belonging thereto, which the corporation possessed by virtue of its charter before such injunction issued." Rev. Stat., tit. 3, § 248. The charter of this corporation is not laid before us, but as the claims of these receivers are not based upon any peculiarity of its provisions, it is safe to affirm that the charter gives to the bank no power to enforce the payment of a note procured by its own fraudulent representations to the maker of it, and for which it gave no consideration.

It was said at the bar, that if the defendant and others had not taken and agreed to pay for the stock, no bills could have

been issued, and no loss thereby sustained by the community, and therefore that the defendant ought to be subjected, upon the principle that when one of two innocent persons must suffer by the fraud of a third, he who trusted such third person and enabled him to commit the fraud shall bear it. But with what propriety this defendant can be said to have enabled the bank to issue bills, it is difficult to discover. It is conceded that he was not an original stockholder, upon whose subscription for shares the capital of the bank was predicated or the organization of the bank effected. Original subscribers for shares may perhaps be said to participate in the creation and organization of the institution, and thus to enable it to exercise its corporate powers and issue bills. But the mere purchaser of transferable shares of the stock of a bank already organized, by such purchase confers upon the bank neither additional capital nor augmented power.

Again it was said that the defendant, though a derivative stockholder, was in no better condition than an original subscriber; and the case of the *Hartford & New Haven R. R. Co.* v. *Boorman*, 12 Conn., 530, was cited as an authority in support of this position. But the only question decided in that case was, that when unpaid shares, liable to future assessments or installments, were by agreement between the original subscribers, the company and the purchaser, transferred to the purchaser as unpaid stock, liable to such future calls, the purchaser assumed, and the seller was exonerated from, the liability to pay such installments when duly called for, and, in that respect only, the purchaser was in the same condition as the original subscriber before the transfer. The difference between that case and this is too obvious to require illustration or remark.

Whether a *bona fide* original subscriber can avoid his obligation by showing that his subscription was procured by fraud, or not, we have not yet determined, and express no opinion. In the case of these receivers against Church, to which our attention was called by the plaintiffs' counsel, the fraud attempted to be set up as a defense was one in which Church himself was a participator—a fraudulent original organiza-

388                          LITCHFIELD.

tion of the bank, effected by means of the fraudulent imposition upon the commissioners of a delusive, sham subscription list—Church himself combining with others in the enterprise, and making his own subscription, on which the suit was brought, for the very purpose of aiding its accomplishment.

The cases cited by the plaintiffs' counsel seem to afford but little support to their positions. Those reported in the 37th Eng. L. & Eq., 451, and the 38th id., 86, arose under the statute 7 & 8 Vic. chap. 113, by which statute shareholders are in express terms made responsible for the debts of the company, and a creditor having obtained judgment against the company and failed to obtain satisfaction by execution against its property and effects, is entitled to another execution against the person, property and effects of any shareholder, upon motion to the court. The courts held that the statute was peremptory, and that it was no answer to the application that the shareholder had been induced to become a shareholder by the fraud of the directors, &c., of the corporation. We have no such statute.

In the case of *Mann* v. *Cook*, 20 Conn., 178, an attempt was made by the president of an insolvent railroad company to discharge a subscriber for forty shares of unpaid stock, upon his paying the price of twenty, and relinquishing the remaining twenty to the company. This court held that the contract of the subscriber for the forty shares was obligatory, that the forty shares subscribed were a part of the capital of the company upon which creditors had a right to rely as a fund for the payment of its present and future liabilities, and that the arrangement, operating to diminish the available means of the company to meet its liabilities, was fraudulent and void.

We think the charge of the judge was right, and advise that the motion for a new trial be denied.

In this opinion the other judges concurred.

New trial not advised.