VIOLETTA A. BEDELL *against* THE NORTH AMERICA LIFE INSURANCE COMPANY.

[SPECIAL TERM.]

(Decided June 15th, 1877.)

Any policy-holder in a life insurance company, incorporated under the general life insurance act of 1853, can maintain an action against the company for the purpose of compelling a settlement of the amount of the dividends which, under the provisions of the charter of the company, should be apportioned to the plaintiff as her share of the profits, and to compel the company to go on and transact its business as required by its charter, notwithstanding, in proceedings instituted by the attorney-general for the dissolution of the company, a receiver has been appointed.

*Quære*, whether an admission of service of an order to show cause why a receiver should not be appointed of a corporation, in proceedings by the attorney-general to dissolve it, made by the attorneys of the corporation, is sufficient to give the court jurisdiction to make the order appointing the receiver.

The fact that the affairs of a life insurance company,—organized under the general life insurance act of 1853,—are being wound up and adjusted in proceedings in the Supreme Court, under the care of a receiver, will not prevent this court from entertaining an equitable action to ascertain and enforce the rights of policy-holders in the company, either on the ground that a conflict of jurisdiction may

be created, because any conflict of decisions may be settled by an appeal to the Court of Appeals, nor on the ground that a multitude of suits may be brought, because the court has the power in its discretion to allow one suit to be tried and stay all similar ones until that one is finally determined by the court of last resort.

MOTION by the plaintiff to have Henry R. Pierson, who had been appointed receiver of the defendant corporation, substituted in place of the corporation as the party defendant. The facts on which the application was founded and opposed are stated in the opinion.

*William Barnes*, for the motion.

*Peckham & Tremain*, for Henry R. Pierson, as receiver, opposed.

CHARLES P. DALY, Chief Justice.—This is not an action brought for the dissolution of an insurance company and the distribution of its assets, and therefore involves no such question as was passed upon by Judge Westbrook in the matter of the attorney-general against the Continental Life Insurance Company, at the Ulster special term of the Supreme Court, March 31, 1877.

It is an equitable action, brought against the North America Life Insurance Company for the purpose of compelling a settlement of the amount of the dividends which, under the provision of the charter of the company, should be apportioned to the plaintiff as her share of the profits, and to compel the company to go on and transact its business as is required by its charter. It is averred in the complaint, that there is $900,000 worth of profits. That the company, in violation of its charter, was not transacting its business, but had unlawfully combined and confederated with the Universal Life Insurance Company, for the purpose of making a practical amalgamation of the two corporations, and of injuring and destroying the rights of the policy-holders in the North America Life Insurance Company; and of transferring its assets and reinsurance fund on deposit at Albany and in its possession, into the funds and assets of the Uni-

versal Life Insurance Company. It is averred that it was alleged, that the North America Life Insurance Company was imperilling its assets in consequence of holding certain items of assets, which were not allowed by the various insurance departments, and that it was reinsured by the Universal Life Insurance Company; that the officers of the North America Life Insurance Company resigned their positions and were replaced by officers and managers of the Universal Life Insurance Company, the latter company assuming, up to the commencement of this suit, the entire control and management of the affairs of the latter company, whilst in fact, as is averred, there has been no legal reinsurance of that company. It is further averred that, as a consideration for the resignation of the officers of the North America Life Insurance Company, the sum of $400,000 was paid in cash to it, and certain illegal and questionable assets were transferred to the officers and managers of the Universal Life Insurance Company. That since these acts, its officers and managers have ceased to transact any new business, and have, as far as possible, weakened the company by transferring its policy-holders to the other, which is one doing business on the same mutual plan. That when the transfer of the policies was made, the policy-holders had received only a small proportion of the net value of their policies; and that, although the number of policies have greatly diminished, large profits have been thereby made, which legally and justly belong to the remaining policy-holders. It is averred that, in addition to the $400,000 received by them in the attempted amalgamation, the profits made by the company, from lapses, and surrender of policies and otherwise, exceed the sum of $500,000; and that the same have not been divided and apportioned to the policy-holders, as required by law.

The relief asked is, that the defendant, the North America Life Insurance Company, should make a full and exact statement of its assets and liabilities, its receipts and payments since the date of its last dividend, and that an accounting be had, whereby the just and legal dividends payable to

the plaintiff can be ascertained, apportioned and paid. That the company be enjoined perpetually from transferring or changing the policy-holders into the said Universal Life Insurance Company, and be compelled to continue and transact their business as required by their charter and the laws of the State.

After the commencement of this suit, and while it was pending, proceedings were instituted before Justice Landon, of the Supreme Court, for a dissolution of the North America Life Insurance Company and the appointment of a receiver. They were instituted by the attorney-general, upon the receipt by him of a letter from the superintendent of the insurance department, John T. Smythe, Esq., to the effect that in the opinion of the superintendent, the affairs of the company were in such a condition as to render the issuing of additional policies and annuity bonds injurious to the public interest. This letter to the attorney-general, it is alleged in the moving papers, was sent to that officer without that examination into the affairs of the company by the superintendent which the law requires; which is denied by the affidavit of the deputy superintendent, read upon this motion, who swears that an examination was made into the affairs of the company at its office in New York; that the result of the examination was embodied in a report by the superintendent, and that the report is on file.

No summons or other process was served upon the company in the manner required by the Code, for the institution of suits or proceedings against corporations, but an admission of service was given by Alexander & Green, as attorneys of the company. An order was made by Justice Landon, on the written application of the attorney-general, requiring the corporation to show cause before the judge, at a day and place named, why the business of the company should not be closed and a receiver thereof appointed, due service of a copy of which order was admitted in writing by Alexander & Green, signing themselves attorneys for the corporation. Upon this admission of service, no opposition being made, as is alleged, Justice Landon ordered and decreed that the com-

Bedell v. The North America Life Insurance Co.

pany should be enjoined and restrained from the further prosecution of its business, and that Henry R. Pierson be appointed receiver of its assets and credits, upon giving the requisite security ; and providing that no application should be made to any court in any matter connected with the duties of the receiver or the funds or assets of the company, or their transfer, sale or delivery, unless five days' notice be first given to the attorney-general. It further declared that all suits, proceedings or actions of every kind against the corporation, or in which it was a party, should be stayed until such receiver was substituted therein ; and all persons were restrained and enjoined from commencing, continuing or maintaining any suit or action thereafter, for any cause whatever, against the corporation. The effect or meaning of this I understand to be, that all further suits, or the continuance and maintaining of suits, should be against the receiver, and not against the corporation.

It is insisted on this motion that Justice Landon could not acquire jurisdiction to make this order or decree against the corporation, upon the written admission of service by Alexander & Green, assuming to act as attorneys of the corporation. But that is not a question that I am required to pass upon, for assuming, as may be the case (*The American Ins. Co.* v. *Oakley*, 9 Paige, 491), that the admission of service of the order to show cause by the attorneys was sufficient to give the court jurisdiction, there is nothing in the order made by Justice Landon which prevents the granting of the application that the receiver be substituted in place of the corporation in this action, or be made a party to it. The order or injunction goes no farther than to stay proceedings in all pending suits until the receiver is substituted therein in place of the corporation, which is all, substantially, that is sought in this motion in asking that the receiver be made a party in this suit.

I do not understand Judge Landon, from anything contained in his order, as enjoining any further prosecution of suits that may have been commenced against the corporation, and requiring the parties in these suits to apply thereafter in

the court appointing the receiver for any relief, legal or equitable, to which they might be entitled, but simply to impose, by his stay, the necessity of making the receiver a party to all these suits, that he may protect the interests of the corporation, and all who directly or indirectly may be affected, as all the rights, powers and duties of the corporation are now vested in the receiver.

It appears to be assumed, in the argument made on behalf of the attorney-general, that having instituted this proceeding to suspend any further transaction of business on the part of the corporation, and a receiver of the corporate effects having been appointed, that everything pertaining to the affairs of the company, or the rights or claims of parties against it, is to be left to the receiver, subject to such directions as he may receive, or such control as may be exercised over him by the court which appointed him; that the parties who have rights of action against the corporation, or who may, before his appointment, have commenced actions against it, must thereafter apply to that court, and can obtain in that court alone the relief, legal or equitable, to which they may be entitled. It is suggested that there are several suits of the same nature as this which were pending when the proceeding was instituted by which the receiver was appointed, and that it would subject him to great annoyance, trouble and embarrassment if he is compelled to become a party in each of these suits in different courts; that it would be more just to him and a sufficient protection to these suitors to compel them to suspend any further prosecution of their claims until he has examined fully into the affairs of the company and ascertained their respective rights, when they can be adjusted and settled under the direction of the court that appointed him.

I am not aware of any such practice, or of any authority for it. A receiver of an insolvent corporation has no greater rights than the corporation. He is bound by all its legal acts; is subject to all the rights and equities existing against it, and the liabilities or rights of third parties are not changed by his appointment. He simply takes its place and stands

as its representative, being also the trustee for the stockholders and creditors, whose rights he may assert if they have been affected by the fraudulent or illegal acts of the corporation. (*Hyde* v. *Lynde*, 4 N. Y. 387 ; *Bell* v. *Shibly*, 33 Barb. 614; *Devendorf* v. *Beardsley*, 23 id. 656; *Wilson* v. *Wilson*, 1 Barb. Ch. R. 592 ; *Gillet* v. *Moody*, 3 N. Y. 480 ; *Talmadge* v. *Pell*, 7 id. 328; *Leavitt* v. *Yates*, 1 Edw. 134; *Lincoln* v. *Fitch*, 42 Me. 456; *Skip* v. *Harwood*, 3 Atk. 564; *In re Colvin*, 3 Md. Ch. Dec. 278; *Portman* v. *Mill*, 8 L. J. [N. S.] Ch. 161 ; *Delany* v. *Mansfield*, 1 Hogan, 234 ; 2 Barbour's Chancery Practice, vol. 1, p. 659, 2d ed. ; Edwards on Receivers, p. 12, 2d ed.)

A receiver of an insurance company, appointed under the provisions of a statute, is subject to the control of any court in the State which has equitable jurisdiction, in the same way that he was subject to the control of the former Court of Chancery, though not appointed by that court. (*In the matter of the Globe Ins. Co.*, 6 Paige, 102 ; *Holbrook* v. *The American Fire Ins. Co.*, id. 220 ; 2 Rev. Stat. p. 464, § 41.) Where the statute has prescribed a summary mode of closing up the affairs of insolvent corporations without the expense and delay of formal suits to settle and ascertain the claims of creditors, that mode must be pursued ; and in such cases suits will not be allowed to be commenced by creditors to ascertain their rights to a distributive share of the fund ; but they will be compelled to submit to a reference under the statute. (Per WALWORTH, C., in *Globe Ins. Co.*, *supra*.)

But this is not such a case. It was an application to the Supreme Court, under the act of 1870, to wind up the affairs of an insolvent life insurance company, and for the appointment of a receiver, and the proceeding in no way affected the rights of the parties in the pending suits. What the effect might be if the Supreme Court of the district in which the receiver has his office had, under the statute (L. 1862, c. 412, and c. 373, pp. 625, 743), appointed a referee, to whom, by the statute, all controversies relating to the receiver's business may be referred, is a matter which it is not necessary now to consider, as there is nothing before me to show that any such

appointment has been made. The receiver of such a corporation has, by statute, all the powers and authority conferred by law upon trustees to whom the assignment of the estate of an insolvent debtor may be made, and some other peculiar and special powers (2 R. S. 469; Laws of 1858, c. 314, and of 1852, c. 71); but there is nothing in these statutory provisions indicating that suits pending against such a corporation are abated when the receiver is appointed, or which provides any statutory mode for determining such rights as are sought to be enforced in the pending suits; but on the contrary provisions authorizing the court to continue a suit where the corporation has been dissolved (Act of April 26, 1832, § 4, c. 295 ; 3 Edmonds' General Statutes of N. Y., p. 674).

The fact that there are several such suits in different tribunals, seeking substantially the same relief, is no more a matter of consideration after the receiver has been appointed, than it would have been previously on the part of the corporation, whose representative he has become; and whatever order may be made, or judgments or decrees rendered in these suits, the receiver will have to abide by and submit to as the corporation would have had to. (2 R. S. 464; *Holbrook* v. *The Receiver, &c.*, 6 Paige, 226 ; *The Guardian Savings Institution* v. *The Bowling Green Savings Bank*, 65 Barb. 275.) Where he has to have the authority of the court before he can originate any proceeding, or do certain acts, it may be that he should apply to the court that appointed him for authority or direction; but where an order is made or judgment rendered by a court having equitable jurisdiction of the parties to be affected, a receiver stands in no different position than the parties he represents, and must obey the order or judgment of the court, as they would have been bound to do.

The plaintiff has brought this suit upon the ground that the officers or trustees of the corporation whose receiver Mr. Pierson has become, have conspired with another corporation to deprive its policy-holders of their rights. It is alleged that the corporation is not and never was insolvent; that it is able to carry on its business, and could have carried it on

but for the collusion of its officers with the Universal Insurance Company ; a fact, indeed, which is admitted by the demurrer that has been interposed ; and it is alleged in the affidavits that the proceeding by which the receiver was appointed was instituted by the collusive co-operation of the officers of both companies. So far as the receiver is concerned, any collusion on his part is denied by his affidavit, but that denial extends only to himself personally, and even then is not conclusive, for the plaintiff is not shut off from inquiry by the denial in the affidavit. But whatever may be the position of the receiver, I must assume, until the demurrer is disposed of, that there is a good cause of action stated in the complaint, and that the plaintiff is entitled to have the receiver made a party to the action, that she may require him, as the representative of the corporation, to submit to such orders as may be made in the suit, or such judgment as may be rendered, if the court should grant the equitable relief sought.

That there may be a conflict of jurisdiction, as there are several suits pending in different tribunals by different parties for the same kind of relief, though suggested, is not necessarily to be anticipated. The rights of all the parties may be adjusted, and in such cases usually are without any conflict of authority ; but if it should arise, the respective tribunals are each subject to the higher authority of the Court of Appeals, which in such a case can be invoked, and its decision will be controlling and conclusive on all parties. As these suits were pending in different tribunals when the receiver was appointed, there was as much ground then as there is now for apprehending a conflict of authority, and it is in no way increased by the appointment of the receiver. So far as it presents any difficulty, it was just as likely to arise under the former equity system, if several suits for the same equitable relief had been brought by different parties before different vice-chancellors. One might have granted the relief sought, and the other denied it; in which case the party considering himself aggrieved could have appealed to the chancellor, who would have determined whether it could

be had or not. In the same way, if there should be any conflict between the different tribunals in which the present suits are pending, it can be settled, and settled finally, by an appeal to the Court of Appeals. If the receiver is made a party to these suits, and takes the place of the corporation, he will be enabled in any of the suits to obtain a controlling and final decision upon any question involved, if one tribunal should hold differently from another in respect to the rights of the company, the receiver, or the rights of any of the parties in these suits.

But there is another and more effectual way of avoiding any such conflict of authority. It is recognized in equity that if several suits are brought by different parties relating to the same subject matter, seeking the same relief and requiring the same investigation, the court, to save the fund from being charged with unnecessary expenses, may direct that but one of the suits be tried, and that the parties in the others be allowed to participate. (*Cumming* v. *Slater*, 1 Y. & C. Ch. 484 ; *Therry* v. *Henderson*, id. 481 ; *Godfrey* v. *Maw*, id. 485 ; *Turner* v. *Dorgan*, 12 Sim. 504 ; *Pindar* v. *Smith*, Mad. & Geld. 48 ; *Campbell* v. *Campbell*, 2 My. & Cr. 25 ; *Taylor* v. *Oldham*, Jac. 527; *Starten* v. *Bartholomew*, 5 Beav. 372 ; 2 Daniels' Chancery Practice, 995 [960, 961], 1 id. 92, 2d Am. Ed.) If the receiver is made a party in the several suits, he can apply to the courts where those suits are for the entry of an order in each case with the consent of the court, that there shall be a trial of but one of the actions and a stay of proceedings in the others until that cause is carried to a decree. The comity of courts will facilitate any such procedure by which the expenses of the fund will be diminished, whilst the ends of justice will be attained. Usually, priority will be given to the suit which was first brought (*Campbell* v. *Campbell*, 2 My. & Cr. 30), unless a subsequent one is more comprehensive or better adapted for ascertaining the rights of all parties, or all the parties agree as to the one to be selected. Upon an application to the court in which the cause is to be tried, an order can be obtained that the parties plaintiffs in the other actions be allowed to attend the

trial by counsel, or if they so elect, they can be made parties. (*Pindar* v. *Smith*, Mad. & Geld. 48; 2 Daniels' Chancery Practice, 1350 [1305], 2d Am. Ed.; 2 Barbour's Chancery Practice, 477, 2d ed.; Code, § 122; *McMahon* v. *Allen*, 12 How. Pr. 39; *Davis* v. *Mayor of N. Y.*, 6 Duer, 663; *State of N. Y.* v. *Mayor of N. Y.*, 3 id. 121; *Shaver* v. *Brainard*, 29 Barb. 25.)

A motion to make the receiver a party defendant in this suit will therefore be granted, and a like decision will be rendered in the cases of *Carlisle* v. *The Guardian Mutual Life Insurance Company*, and *Ross and others* v. *The same;* these cases presenting exactly the same question.