# American Oak Extract Co. v. Ryan.

*Action on a Contract.*

1. *Action on a contract of sale; when maintainable.*—Where, in an action for the price of wood, it is shown that the defendant offered to purchase from the plaintiff the wood, the price of which is sued for, if placed on the bank of a certain designated river and loaded by the plaintiff on a barge to be furnished by the defendant, and that within a reasonable time after such offer, the plaintiff put the wood at the place designated, but defendant failed to furnish the barge on which it was to be loaded, this performance on the part of the plaintiff constituted a binding executed contract, upon which the plaintiff was entitled to recover in such action ; and the fact that thereafter said wood was burned, without fault on the part of the plaintiff, presents no bar to plaintiff's recovery.

2. *Same; charge of the court to the jury.*—Where, in an action for the price of wood delivered by plaintiff at a convenient place on the bank of a designated river as required by an alleged contract, under which the defendant was to furnish a barge to be loaded by plaintiff with the wood, the defendant testified that he said to plaintiff that the time in which the barge could be furnished would depend on circumstances, and that when the wood should be so placed on the bank of the river he would furnish the barge as soon as the circumstances would permit, a charge that there was no evidence that it was a part of the contract that the river was to be in such a condition as to permit the barge to be loaded where the wood was placed, is erroneous, and properly refused.

3. *Charge to the jury; erroneous when withdrawing certain facts from the consideration of the jury.*—An instruction to the jury which withdraws from them the consideration of a disputed question of fact is erroneous.

APPEAL from the Circuit Court of Morgan.

Tried before the Hon. H. C. SPEAKE.

This was an action brought by the appellee, F. M. Ryan, against the American Oak Extract Company, to recover an amount, alleged to be due the plaintiff for 50 cords of wood, under a contract, alleged to have been made with the defendant.

There were four counts in the complaint. The first is on an account, alleged to be due on the 1st day of October, 1891. The other three are on a contract, not differing, except that each is fuller in its statement than the preceding one, but each the same in substance and effect. The first and second counts were demurred to, and the demurrers were overruled. Afterwards the 3d and 4th were added, by leave of the court, and these were demurred to also, and the demurrers were overruled.

The gravamen of the complaint is, that on or about the 12th of August, 1892, the plaintiff, F. M. Ryan, and J. J. Ryan entered into a contract with the defendant, whereby it was agreed that defendant would take from plaintiff and said J. J. Ryan 50 cords of wood at the price of $2.50 a cord, if they would deliver said wood at a convenient point on the bank of the Tennessee river, in Morgan county; the defendant to furnish a barge, on which the wood was to be loaded, and plaintiff and said J. J. Ryan were to load said wood upon said barge. It is averred that after said contract was made, said J. J. Ryan sold to the plaintiff all the right and interest he had in said contract, made as aforesaid with the defendant; that plaintiff cut said 50 cords of wood and placed it at a convenient place on the bank of the Tennessee river, in all respects as he has contracted to do, and notified defendant that said wood had been cut and where it had been placed on the bank of said river; and requested the defendant to send a barge for it, as it had contracted to do; but defendant failed and refused to send a barge on which to load the wood, and failed and refused to take and receive said wood, and to furnish a barge for

[American Oak Extract Co. v. Ryan.]

the same, and the wood was destroyed and lost to the plaintiff, whereby he was damaged $125, for which he sues. The demurrers to the complaint being overruled, the defendant then pleaded to the 2d, 3d and 4th counts of the complaint, alleging, "that, if it ever made any such contract as alleged in the complaint, at the time plaintiff claims to have demanded of it a barge, on which said wood was to be loaded, the Tennesse river, upon which said barge was to be floated, to the point where said 50 cords of wood is alleged to have been placed, was too low to permit the furnishing of said barge by the defendants for the purpose of loading said wood, until after the said wood had been destroyed; that the barge was to have been furnished, if furnished at all, from the works in New Decatur, Ala., by defendant, and that by reason of the low stage of the water in said river, it was impossible for defendant to furnish said barge ; that by said alleged contract, the barge was to be furnished only in the event the condition of the river should be such that the said barge could be floated at and after that time, and the plaintiff should notify the defendant that he had as much as 50 cords of wood at some point on the Tennessee river, to be loaded on said barge." The plaintiff demurred to specified parts of said special pleas, which was overruled.

Thereupon the plaintiff replied to said pleas, in substance as follows : In the first replication he denied the allegation that plaintiff was to furnish and load said wood on the barge only in the event and when said river was in such condition as that the barge could be floated thereon. In his second replication plaintiff averred that defendant refused to take said wood and furnish said barge, on the ground that it had no such contract, and thereby waived its plea of inability to place said barge on the Tennessee river on account of the condition of said river, if such condition was in the contract. It was alleged in the third replication that after the plaintiff had fully performed his contract with defendant, he notified defendant that the wood was ready to be loaded on a barge, and requested defendant to furnish a barge, but defendant declined to furnish one, upon the express ground that the works of defendant were shut down for repair, and defendant said nothing about the river being in such a condition that a barge could not be placed

for said wood thereon, or that said river was at low water; and thereby defendant waived any condition in the contract, if there was any such condition therein, exonerating defendant from placing said barge at said point or taking said 50 cords of wood as averred in the complaint. On this replication issue appears to have been joined. To the original and amended complaints the defendant also pleaded, that the allegations of said complaints were untrue.

The evidence tended to show, that a few days prior to the 14th of August, 1892, one E. M. Russell had a conversation with J. J. Ryan, who was a brother of plaintiff, in which said Ryan requested him, Russell, to see the managing agent of the defendant, and to ascertain from him whether he, Ryan, could sell the defendant some chestnut-oak wood, and what it was paying for it; that on the morning of the 14th of that month, at the breakfast table at the Tavern, in Decatur, he, Russell, met Harvey Lewis, the secretary and general manager of the defendant, who, as was shown, had the right to contract for the purchase of wood for defendant, and said to him, "that he had a friend in the country, who desired to sell to the defendant some chestnut-oak wood; that he asked said Lewis, what the defendant was paying for it, and Lewis replied, two dollars and a half per cord, and that whenever his friend would place upon the bank of the river, as much as 50 cords or 100 cords, at a convenient place where a barge could be landed for the purpose of loading, and would notify him, that he would have their steam boat drop a barge down where it could be loaded thereon." This witness further testified, that he did not remember positively whether he stated the name of the party desiring to sell the wood, or not, but his best recollection was that he told him it was Mr. Ryan; but Mr. Lewis testified, that his best recollection was, that the name of the party was not given. Russell also testified, that according to his best recollection, nothing was said about the stage of the water in the Tennessee river having anything to do with the ability of defendant to place the barge upon which the wood was to be loaded, and that Lewis told him, that when the wood was loaded upon the barge, the defendant would pay $2.50 per cord therefor; and he immediately notified Ryan of the terms and conditions of Lewis' offer. There was no conflict in

[American Oak Extract Co. v. Ryan.]

the evidence as to plaintiff having delivered the 50 cords of wood at a place on the river known as "Simpson's Field," in Morgan county, about six miles above Somerville; that he had bought out his brother's interest in the wood, and became sole owner of it, before it was all delivered; and that the delivery was made about the first day of October, 1891.

The plaintiff testified, that on the 2d of October, 1891, he went to the works of the defendant and saw Mr. Lewis, and told him the wood was ready for the barge, and requested him to have one put where the wood was, so that it could be loaded thereon; that Lewis, at first, did not admit any thing about the contract, but after the witness reminded him of the conversation he had with said Russell, in reference to the wood, he then acknowledged the conversation, and said he remembered all about having had it, but stated, that defendant could not furnish a barge for the wood, that it had stopped its works for repairs, but he said nothing about the river being too low to put a barge at the place plaintiff had corded the wood. Plaintiff further testified, that the wood lay on the banks of the river where he had corded it, from the 1st of October, to the 5th of November, 1891; that four or five weeks after he first saw Lewis and notified him of the delivery of the wood, and requested him to furnish the barge, the wood was destroyed by fire, and he then went to Lewis and demanded pay for the wood; that Lewis refused to pay for it, denied having made a contract for it, or that he had agreed to furnish a barge; that this was the first time Lewis had denied making a contract after he had been reminded of the conversation with said Russell.

Lewis, as a witness for defendant, testified, that he remembered the conversation with said Russell; and his account of it was, that Russell asked him what he was paying for wood, and he told him they were paying $2 50 per cord, delivered upon a barge; that Russell said to him, that he had a friend who had some wood he desired to sell, and he immediately told Russell he could not furnish a barge, and that the time within which one could be furnished would depend upon circumstances; that there was no contract between him and Russell, but the simple statement by him to Russell, that defendant would take wood at $2.50 per cord when placed upon the

bank of the river where it could be reached by a barge, and that, if the wood should be so placed, and the defendant notified, it would place a barge upon which the wood was to be loaded, as soon as circumstances would permit; that from the 25th of August to the 25th November the river was too low to permit the running of defendant's boat and barges thereon, and that by reason of the low stage of the water in the river, the defendant could not have placed a barge at the point where plaintiff is alleged to have corded the wood, at any time between the 1st of October and the last of November following. This witness further testified, that he told the plaintiff, that it was impossible for the defendant to furnish him a barge to load the wood on, even if defendant had a contract for the wood, because the river was too low to permit the running of the boat and barges belonging to defendant; that he never admitted to the defendant, in any conversation, that he had made a contract for the purchase of this wood, and never stated to him that the only reason he could not furnish a barge was because defendant's works had closed down for repairs. He also stated, that he only had a casual conversation with said Russell at the breakfast table, was not making and did not make any contract, and did not say to Russell that the barge would be furnished only on condition the river was in such a boatable condition as would enable defendant to place a barge where the wood was. The evidence as to the stage of the water in the river at the time plaintiff demanded a barge was in conflict; that of plaintiff showing that there was an abundance of water to admit of placing a barge at the place requested, and that of defendant, that it could not have been done.

The court, at the request of the plaintiff, gave the following written charges to the jury: (1.) "If you believe from all the evidence that defendant contracted with plaintiff and J. J. Ryan to take fifty cords of wood, at $2.50 per cord, and that defendant would furnish a barge to load it upon; and you further find that J. J. Ryan sold or surrendered his interest in said contract to plaintiff, and that plaintiff complied with the contract so made, if you find it was made, and you further find that defendant broke the contract by failing to furnish the barge, and you find that the wood was burned up without the fault of plaintiff; then, if you believe these

[American Oak Extract Co. v. Ryan.]

facts, if facts they be, the plaintiff is entitled to a verdict." (2.) "I charge you, as a matter of law, that if the plaintiff placed the wood on the river bank on or about the first of October, 1891, and notified defendant on or about the 2d October, 1891, that the wood was so placed, and that the wood stayed there four or five weeks after October 2d, 1891, then, if you believe this, I charge you, as matter of law, defendant had a reasonable time to remove said wood." (3.) "I charge you, gentlemen of the jury, that there is no evidence before you, showing that it was a part of the contract, (if a contract was made), that the Tennessee river was to be in such condition as to permit a barge to be landed where the wood was put." The defendant separately excepted to the giving of each of these charges, and also separately excepted to the court's refusal to give each of the following charges requested by it: (1.) "I charge you, gentlemen, that under the proof in this case there was no contract between the plaintiff and the defendant." (2.) "If you believe the evidence, your verdict must be for the defendant."

There was judgment for the plaintiff, and the defendant appeals, and assigns as error the several rulings of the trial court to which exceptions were reserved.

D. W. SPEAKE, for appellant.—1. There was no contract shown in this case, on which the plaintiff was entitled to recover.—*Martin v. Black*, 21 Ala. 721; *Strong v. Catlin*, 35 Ala. 607; *Gas Light Co. v. City*, 87 Ala. 256.

2. What is a reasonable time is sometimes a question for the court, and sometimes for the jury. It is a question for the jury when it depends upon facts extrinsic to the contract.—*Watts v. Sheppard*, 2 Ala. 425; *Drake v. Goree*, 22 Ala. 409; *Murrell v. Whiting*, 32 Ala. 55; *Brown v. Johnson*, 42 Ala. 208; *Cotton v. Cotton*, 75 Ala. 345.

O. KYLE, *contra*.—All the counts of the complaint, original and amended, are in assumpsit and not in case, and show a cause of action.—*Mobile Life Ins. Co. v. Randall*, 74 Ala. 177; *Wilkinson v. Moseley*, 18 Ala. 288; *Ala. Mid. R. R. Co. v. Martin*, 100 Ala. 511; *Pruitt v. Ellington*, 59 Ala. 454; *Railroad Co. v. Harris*, 67 Ala. 6; 2 Wait's Actions & Defenses, 124; *Booth v. Farmers &c. Bank of Rochester*, 65 Barb. 457.

HARALSON, J.—1. There was much pleading in this case, and to go through it all, to vindicate the rulings of the court thereon, would be tedious and unnecessary. It is sufficient to say, we find no errors of which the appellant can complain.

2. Let the following principles governing this case be first stated : ''The doing of a thing pursuant to an offer may be both an acceptance and performance. If one makes an offer to another, or to all persons in general, and does not withdraw it, while the other person in the former case, or any one in the latter, goes forward and does the thing, such performance carries with it an acceptance of the offer ; and the person who made it must pay or do what he promises.''—Bishop on Contracts, §§ 329, 330.

3. "In unilateral contracts, it is often, if not generally the case, that acceptance of the offer is only to be inferred from the performance of the consideration. If this is performed in accordance with the terms of the offer, a contract is thereby formed without notifying the offerer of the intention to perform, or of the completion of the performance."—1 Parsons on Contracts, 492, note 1, and authorities. So too, it has been held, that if one offers to another to do something, if that other will do something else, and the party to whom such offer is made acts upon it, either to the advantage of the offerer or to his own disadvantage, such action makes the contract complete, and notice of the acceptance of the offer before is unnecessary.—Bank v. Walkins, 154 Mass. 387 ; 1 Parsons on Contracts, 493 ; 3 Amer. & Eng. Encyc. of Law, 847, and authorities cited.

4. Where a contract does not specify a particular time for its performance, the presumption is, that the parties intended performance within reasonable time. And this is sometimes a question of fact, and at others, one of law. When it depends on facts extrinsic of the contract, which are matters of dispute, it is a question of fact ; but, when it depends upon a construction of a contract in writing, or upon undisputed, extrinsic facts, it is matter of law.—Cotton v. Cotton, 75 Ala. 346 ; Howard v. E. T., V. & Ga. R. R. Co., 91 Ala. 269.

5. The evidence for the plaintiff tended to establish the allegations of his complaint, and that of defendant to establish its pleas. If defendant proposed, and the

plaintiff performed, as is averred, and that, within a reasonable time, the offer and performance constituted a binding executed contract.

Making application of the foregoing principle, we hold that charge No. 1, given at the request of the plaintiff, is free from error. It proceeds upon the hypothesis, that if the plaintiff complied with the contract, if one was made, whatever it may have been, and the defendant broke it, by failing to furnish the barge, and the wood was burned without fault of plaintiff, that plaintiff was entitled to recover, which is a correct statement of the law.

6.   In charge numbered 2 the court erred in withdrawing from the jury the consideration of the disputed fact of the stage of the water in the river, at the time of plaintiff's alleged performance of the contract—if they should believe that one was entered into, and this was a part of it—and whether or not it had reasonable time, after notice of the delivery of the wood, to send a barge for and receive it, before it was destroyed.

7.   Charge 3 was erroneous.  There was evidence on the part of the defendant, which tended to show, that it was a part of the understanding between the parties—if as a matter of fact there was a contract between them—that the river was to be in such a condition as to permit a barge to be landed for the wood.   The witness Lewis testified, that in his conversation with Russell—on which the plaintiff counts to establish his contract, but which the defendant denies did establish one—he told him, "that the time within which a barge could be furnished would depend upon circumstances;" that he further said to him, "that defendant would pay $2.50 per cord, when placed on the bank of the river, where it could be reached by a barge, and that [when] the wood should be so placed and the defendant notified, it would place a barge upon which the wood was to be loaded, *as soon as circumstances would permit*." If this was the correct version of the understanding, the stage of the water in the river necessarily entered into the consideration of the time when the barge was to be furnished.

There was no error in refusing the two charges requested by defendant.

Reversed and remanded.